256 P.2d 721

**BEAMAN et al. v. BENCH.**

No. 5699.

Supreme Court of Arizona.

May 11, 1953.

D. Kelly Turner, of Phoenix, for appellants.

Herbert B. Finn, of Phoenix, for appellee.

WINDES, Justice.

There is presented for determination the correctness of the judgment of the superior court in reversing a ruling of the Employment Security Commission of Arizona which denied unemployment insurance benefits to 95 employees of the Reynolds Metals Company, hereinafter referred to as the company. All dates mentioned refer to the year 1951 unless otherwise designated.

The facts are as follows: In July the company had 1369 employees in its production department. According to the terms of its contract (hereinafter specifically set forth) with C.I.O. Local 3937 of the United Steelworkers of America, the bargaining agency for its members, hereinafter designated as the union, provision is made for paid vacations. On May 7th, the company gave notice that it intended to shut down for the vacation week prescribed in the contract, and that since indications pointed to heavy production in July no leave supplementary to vacations could be granted during that month. Following this notice, a number of meetings were had between the company and the union representative concerning the matter of earned vacations in an attempt to arrive at some agreement that would avoid a shutdown. No such agreement could be accomplished.

The plant shut down its production activities for two weeks—July 9th through July 22nd—and 95 of the employees, some having no earned vacation and some having only one week, claimed unemployment benefits under the provisions of the Employment Security Act. The usual procedure was followed, the employees first filing with the claims deputy who denied the claims. Claimants appealed to the appeal tribunal, consisting of three members, which tribunal sustained the action of the claims department upon two grounds: (1) that under the provisions of section 56–1005(f), Cum.Supp.A.C.A.1939, the unemployment was due solely to a customary suspension of all operations, and (2), that under the provision of section 56–1004 of said code, the employees were voluntarily unemployed and not attached to the labor market and were disqualified for benefits. Appeal was taken to the Employment Security Commission and the action of the appeal tribunal was sustained. The matter was brought by petition to the superior court for review, and the court after reviewing the record reversed the decisions of the claims deputy, the appeal tribunal and the security commission with the direction that the claimants be allowed benefits. The Employment Security Commission appeals.

The facts, as found by the appellant and supported by competent evidence, that might have any bearing on the legal question submitted are that of the 1369 employees affected by the two-week shutdown,

278 received vacation pay in excess of one week, 469 received such pay for one week, and 622 received none; that the bargaining agreement between the union and the company provides as follows:

"Article 20

"Section 1. 'The vacation period for production Departments shall begin with Monday of the week following July the Fourth.'

"Section 2. 'Vacation periods for Maintenance Departments shall be established by each Department, and each employee shall immediately after July First notify his foreman of the date he prefers to take his earned vacation.'

"Section 3. Establishes the formula whereby workers accumulate vacation time up to two weeks on the basis of length of service and hours of employment. Workers who have completed five years of continuous service and who have worked a minimum of 1400 hours during the twelve months preceding the vacation period are entitled to a full two weeks' vacation with pay."

The commission further found that in 1950 the plant closed, except for necessary maintenance, for a period of one week, at which time none of the employees had qualified for two-week vacations, but in 1951 more than one-half thereof had earned vacations of one week or more. Concerning the negotiations of the union and the company on the subject matter, the commission

found that the minutes of the meetings established that both submitted proposals for scheduling the vacations; that the union's final proposal was that all earned two-week vacations be taken at the time desired by the respective individuals or at one time during July; that the company advised the union that either alternative would necessitate a shutdown for the reason that the members entitled to more than one week were key men in the production department, and the union representative advised that he was cognizant that the plant might have to shut down for a two-week period.

▮ The court, in reviewing a decision of the Employment Security Commission, may disturb such decision on factual questions only when the same are unsupported by competent, material, and substantial evidence. Section 56–1011n (7), Cum.Supp. A.C.A.1939. Consequently we will take the foregoing factual statement as true and test the lower court's judgment with the law applicable thereto.

From the foregoing, it is plain that the appellant-commission decided from the evidence submitted that there was an effort on the part of the union and the company to arrange vacation time called for under the contract in such a manner as to avoid a shutdown; that these efforts failed, for the reason that the union insisted that those of its members entitled under the contract to paid vacations take them at a time and in sufficient numbers to make it impracticable for the company to operate its production department for the two-week period, and on such basis it concluded that all employees affected were voluntarily unemployed and entitled to no benefits.

▮ According to the Employment Security Act, section 56–1001, Cum.Supp. A.C.A.1939, it is designated as a public policy of the state that "involuntary unemployment" is a subject of general interest, and the general welfare calls for the exercise of the police power for the compulsory setting aside of unemployment reserves to be used for the benefit of persons "unemployed through no fault of their own." Plainly, therefore, if one is voluntarily unemployed or unemployed through fault of his own, he is not entitled to benefits under the Act. It has been held in several jurisdictions that when a union, as the exclusive bargaining agency for its members, enters into a contract with an employer on behalf of its membership, all parties, including each member working under the contract, are bound by its provisions. In re Buffelen Lumber & Mfg. Co., 32 Wash.2d 205, 201 P.2d 194; Mattey v. Unemployment Compensation Board of Review, 164 Pa.Super. 36, 63 A.2d 429; Moen v. Director of Division of Employment Security, 324 Mass. 246, 85 N.E.2d 779, 8 A.L.R.2d 429.

The following cases are relied upon by appellee as holding to the contrary. American Bridge Co v. Review Board of Indiana Employment Security Division, 121 Ind.App. 576, 98 N.E.2d 193; Schettino

v. Administrator, Unemployment Comp. Act, 138 Conn. 253, 83 A.2d 217. A close examination of these cases reveals a distinction. In the Connecticut case, the company retained the right to designate the vacation period between May and October, and the contract further provided that when the plant was shut down for other reasons, the company might designate that time as a vacation period. The company was not required to and did not permit the members nor the union grievance committee to have any part in designating the period when earned vacations were to be taken. Under these conditions, the court held that the unpaid employees were involuntarily unemployed. This is quite different from the case at bar where the company is required by the terms of its contract to grant vacations at a designated time (beginning Monday of the week following July 4th) to a sufficient number of key employees to make it impracticable to operate. Likewise, in American Bridge Company v. Review Board of Indiana Employment Security Division, supra, the shutdown was for the purpose of taking inventory and there was no causal connection between the stoppage of operations and the enforcement of the union contract. There is a distinction between shutdowns forced by virtue of the terms of the contract and those which are wholly at the employer's option. Golubski v. Unemployment Compensation Bd. of Rev., 171 Pa.Super. 634, 91 A.2d 315.

Appellee urges that since there is no express stipulation in the contract for cessation of operations during the agreed vacation time, the decisions of jurisdictions holding the members bound by the contract are not in point. We cannot agree. Appellee and the claimants he represents must be deemed to have agreed to any shutdown compelled by the company's contractual obligations to grant leaves at a specified time. They voluntarily entered into the agreement, were voluntarily working under all of the provisions thereof, insisted upon the enforcement of its terms concerning the vacation period, and must be held to have consented to the results of such enforcement to the same extent as if they had expressly asked for the layoff. The claims deputy, the appeal tribunal and the Employment Security Commission were all correct in ruling that the appellee and those he represents were voluntarily unemployed and not entitled to benefits under the Employment Security Act.

The commission found that the previous year operations were stopped one week, except for maintenance work, when none of the employees qualified for a two-week vacation, and concluded that the suspension of operations involved herein was a customary suspension, thereby disqualifying claimants for benefits under the provision of said section 56–1005(f). We think the appellant erroneously applied this section of the code. It provides disqualification if the commission finds that the unemployment "is

due solely to a customary suspension of all operations". The evidence shows beyond question that the suspension under discussion was caused by the necessity of granting vacations required by the contract, and certainly it cannot be said to have been due solely to any custom.

The judgment of the court is reversed with instructions to enter judgment affirming the decision of the commission.

STANFORD, C. J., and PHELPS, LA PRADE, and UDALL, JJ., concurring.