THOMAS *v.* EMPLOYMENT SECURITY COMMISSION.

1. UNEMPLOYMENT COMPENSATION—JAIL—AVAILABILITY FOR WORK.
   An employee who has been committed to jail would not be entitled to unemployment compensation benefits during period of incarceration since he is not "available" for work (CLS 1956, § 421.28).

2. SAME—VOLUNTARY LEAVING WORK—UNDISPUTED FACTS.
   The question of whether an employee left his work voluntarily, within the meaning of provision of the employment security act disqualifying an employee for voluntarily leaving his work, is determined as a matter of law, where the undisputed facts are that he was discharged for failure to report for work due to jail sentence and upon discharge from jail he reported for work but was denied admission to the employer's plant (CLS 1956, § 421.29).

3. SAME — DISQUALIFICATION FOR BENEFITS — CONSTRUCTION OF STATUTES.
   The provision of the employment security act relative to disqualification for benefits is not so vague and ambiguous as to require use of provision declaring policy of the act for purposes

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 34.

[2, 4, 6] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 35.

[5] 50 Am Jur, Statutes § 229.

of construction, where facts were undisputed that claimant reported for work immediately upon release from jail after serving sentence for driving car without an operator's license (CLS 1948, § 421.2; CLS 1956, § 421.29).

4. SAME—DISQUALIFICATION FOR BENEFITS—VOLUNTARILY LEAVING WORK.

The voluntary assumption of a risk which an employee knows, may, but he trusts and assumes will not, keep him from work is not the "voluntary" leaving of his work as the term is used in the disqualification for benefits provision of the employment security act (CLS 1956, § 421.29).

5. SAME — DISQUALIFICATION FOR BENEFITS — CONSTRUCTION OF STATUTES.

It is not the proper function of the court to amend the employment security act to broaden or extend the disqualifications fixed, in plain language, by the legislature as the matter of disqualification is a question of policy for the legislature (CLS 1956, § 421.29).

6. SAME—DISQUALIFICATION FOR BENEFITS—JAIL SENTENCE—VOLUNTARILY LEAVING WORK.

Employee who reported for work immediately upon completion of jail sentence for driving without an operator's license for which he had been arrested en route to work and during the jail term had been discharged by employer for failure to report for work, was not disqualified from receiving unemployment compensation benefits for period after he reported for work, since he had not left his work "voluntarily" as that term is used in the section of the employment security act relative to disqualification for benefits (CLS 1956, § 421.29).

CARR and VOELKER, JJ., dissenting.

Appeal from Wayne; Toms (Robert M.), J. Submitted April 15, 1959. (Docket No. 58, Calendar No. 47,821.) Decided July 13, 1959.

John Thomas, Jr., filed claim for unemployment compensation benefits when his employment was terminated by Scott Paper Company, a foreign corporation. Michigan Employment Security Commission Appeal Board, on review, denied application. On certiorari to circuit court by Michigan Employ-

ment Security Commission there was determination of disqualification for benefits and denial of right to compensation. Michigan Employment Security Commission appeals. Reversed.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, and *E. J. Setlock,* Assistant Attorney General, for Michigan Employment Security Commission.

*Butzel, Eamon, Long, Gust & Kennedy (Addison D. Connor* and *James D. Ritchie,* of counsel), for Scott Paper Company.

Dethmers, C. J.   This is appeal from a circuit court order affirming an order of the employment security appeal board upholding a referee's decision that claimant, defendant John Thomas, Jr., is disqualified for benefits under the Michigan employment security act* for the duration of his unemployment, beginning April 17, 1957, because he left his work voluntarily without good cause attributable to the employer, defendant Scott Paper Company.

Claimant worked for employer from April 18, 1955, through April 2, 1957. On April 4, 1957, while driving to his employment he was arrested for driving an automobile without an operator's license. The next day he was convicted and sentenced to 15 days in the Detroit house of correction. On that day he notified his employer of his incarceration and that he would not be able to report for work until his release. On April 17th employer terminated his employment for failing to return to work. On April 19th he had completed serving his sentence and reported for work. He was denied admission to employer's plant and later was notified that he had

---

* CL 1948 and CLS 1956, § 421.1 *et seq.* (Stat Ann 1950 Rev and Stat Ann 1955 Cum Supp § 17.501 *et seq.*).

been discharged for failure to report for work due to jail sentence.

At the outset, it is to be observed that no claim is made here of the right to benefits for the period while claimant was in jail. During that period he did not meet the eligibility conditions of section 28 of the act in that he was not then "available" for work. (CLS 1956, § 421.28 [Stat Ann 1957 Cum Supp § 17.530].)

With respect to his unemployment beginning on April 19th, immediately after his release from jail and when he reported for work, was he, as held by the referee, disqualified for benefits under section 29, subd (1)(a)(1) of the act because he left his work voluntarily? (CLS 1956, § 421.29 [Stat Ann 1957 Cum Supp § 17.531].)

There being no dispute as to the facts and circumstances attending and causing claimant's absence from work while he was in jail and thereafter, we reject employer's contention that the issue presented is not one of law but of fact requiring affirmance of the court below and the appeal board unless the decision is found to be contrary to the great weight of the evidence. Upon the record here presented the question whether claimant left his work voluntarily, within the meaning of the statute, is one of law, which we determine accordingly.

Employer points to the declaration of policy, in section 2 of the act (CL 1948, § 421.2 [Stat Ann 1950 Rev § 17.502]), that, *inter alia,* the reserves established under the act are "to be used for the benefit of persons unemployed through no fault of their own". This section does not purport to spell out disqualifications for benefits. That is left to section 29. The declaration of policy might be considered helpful in arriving at the legislative intent in its expression of disqualifications if the latter were vague or ambiguous. The disqualification stated

in section 29 and here sought to be invoked suffers from no such infirmity, as applied to the facts at bar, and is in no need of borrowing, for purposes of construction, from section 2.

Had claimant "left his work voluntarily"? Employer says that, although claimant knew the law required an operator's license for driving, he deliberately drove his automobile without one, that he thus voluntarily assumed the risk of arrest, conviction and imprisonment, resulting in the necessity of absenting himself from work, and that this was the equivalent of leaving his work voluntarily. More concisely stated, it is employer's position that an employee has left his work voluntarily if he has done a voluntary act which he knew could and which later did, in fact, cause his absence from work.

The voluntary assumption of a risk which an employee knows may, but he trusts and assumes will not, keep him from work is not the voluntary leaving of his work. Doing an act, even though voluntarily, which results, contrary to the doer's hopes, wishes and intent, in his being kept forcibly from his work is not the same as voluntarily leaving his work. The statute mentions the latter, but not the former, as an act disqualifying for benefits. "We are not as yet prepared to accept and apply the doctrine of constructive voluntary leaving." *Copper Range Company* v. *Unemployment Compensation Commission,* 320 Mich 460, 469. It is not the proper function of the court to amend the statute to broaden or extend the disqualifications fixed, in plain language, by the legislature. Whether one in claimant's situation ought to be disqualified is a question of policy for the legislature, not a judicial question to be determined by the court.

Claimant was en route to his work. It was not shown that his driving voluntarily without a license was done with the purpose or intent of thereby

becoming incarcerated and thus absent from work. As he drove to his employment he intended to be on the job. Instead, he was arrested, imprisoned and so kept from his work. There appears to have been nothing voluntary about this so far as claimant was concerned. On the contrary, at that juncture he was present at a place where he did not wish to be, jail, and, perforce, absent from the place where he did wish to be, his place of work. We hold, therefore, that he did not leave his work voluntarily and the disqualification for benefits urged against him does not apply.

Reversed.

KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred with DETHMERS, C. J.

CARR, J. (*dissenting*). This case involves a question of statutory interpretation. The facts are not in dispute. On April 4, 1957, John Thomas, Jr., an employee of defendant Scott Paper Company, was arrested for operating an automobile on a public street in the city of Detroit without a driver's license. He was convicted of the offense and sentenced to 15 days imprisonment in the Detroit house of correction.

Following his release from imprisonment Thomas reported for work. In the meantime he had been discharged, and, in consequence, was denied admission to the plant by an employee of the Scott Paper Company. Immediately thereafter he filed a claim under the statute* for unemployment benefits. The employment security commission granted the application, but on appeal the referee reversed, holding that under the proofs submitted Thomas had left

* PA 1936 (Ex Sess), No 1, as amended (CL 1948 and CLS 1956, § 421.1 *et seq.*, [Stat Ann 1950 Rev and Stat Ann 1955 Cum Supp § 17.501 *et seq.*]).

his work voluntarily without good cause attributable to the employer, and was disqualified under section 29, subd (1) (a) (1) of the Michigan employment security act.   In support of such conclusion prior decisions of the circuit court of Wayne county were cited.   The defendant appeal board* sustained the position of the referee, saying, in part:

"The facts involved herein are not in dispute and are to the effect that the claimant was removed from the payroll as the result of being incarcerated for 15 days.   We have in the past consistently held that a separation under such circumstances was disqualifying.   As pointed out by the referee we have been upheld in this ruling by the Wayne circuit court on 2 occasions.   We again here hold that the claimant's separation was under disqualifying circumstances.   It is accordingly our finding that the referee's decision is in accord with and fully supported by the facts and law and in line with precedents established by this board.   We find therefore that his decision cannot be disturbed."

Reviewing on certiorari, the Honorable Robert M. Toms, circuit judge, affirmed the decision of the appeal board denying compensation.   Referring to prior decisions of the circuit court and expressing agreement therewith, the opinion filed summarized the conclusions of the judge as follows:

"In this case the following course of events leads to the inescapable conclusion by the court that the voluntary act of the plaintiff resulted in his withdrawal from his employment; the claimant has a choice of doing or not doing an unlawful act, and in the face of this freedom of choice he elects to commit the unlawful act which results in his imprisonment.   To say that his imprisonment is not voluntary is specious reasoning.   The act which re-

---

* The appeal board was named as a defendant in the writ of certiorari.—REPORTER.

sulted in his imprisonment was voluntary and this is sufficient to bring it within the provisions of the statute referred to."

Section 29 of the employment security act (CLS 1956, § 421.29 [Stat Ann 1957 Cum Supp, § 17.531]) provides, in part, as follows:

"(1) An individual shall be disqualified for benefits:

"(a) For the duration of his unemployment in all cases where the individual has: (1) Left his work voluntarily without good cause attributable to the employer or employing unit, or (2) has been discharged for misconduct connected with his work or for intoxication while at work."

On behalf of the employer in the instant case it is contended that the imprisonment resulting in the inability of Thomas to continue in his employment, and his discharge therefrom, resulted from his voluntary act, and that the statutory provision above quoted should be construed as rendering him ineligible for compensation. It is insisted further that the provisions of the statute should be construed together, and that the language above quoted must be read in the light of the general purpose of the enactment as set forth in section 2 thereof (CL 1948, § 421.2 [Stat Ann 1950 Rev, § 17.502]) which reads as follows:

"Declaration of policy. The legislature acting in the exercise of the police power of the State declares that the public policy of the State is as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State. Involuntary unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker

and his family, to the detriment of the welfare of the people of this State.   Social security requires protection against this hazard of our economic life. Employers should be encouraged to provide stable employment.   The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, thus maintaining purchasing power and limiting the serious social consequences of relief assistance, is for the public good, and the general welfare of the people of this State."

Under general principles of statutory construction the provisions of an enactment must be construed if possible in such manner as to harmonize them. In the instant case we see no conflict between the declaration of policy and the provisions above quoted of section 29.   Under said section if an employee voluntarily leaves his work without good cause attributable to his employer, or is discharged for misconduct connected with his work, he is disqualified for benefits for the reason that he must be deemed to be voluntarily unemployed.   The beneficial provisions of the statute are, in keeping with their specific language, designed for the benefit of persons capable of working but prevented from doing so other than by the results of their own acts.   In *Dwyer* v. *Unemployment Compensation Commission,* 321 Mich 178, 188, Mr. Justice BUTZEL well expressed the purpose of the legislature in the enactment of the Michigan employment security act.   In discussing its interpretation he said, in part:

"In view of this declaration of public policy, it is evident that the purpose of the unemployment compensation act is to provide protection against the evils incident to involuntary unemployment, and thus, to foster social and economic security for the

people of our State. The act is intended to provide benefits for those who are unemployed through no fault of their own, who are willing, anxious, and ready to obtain employment so that they may support themselves and their families. It is intended to benefit persons who are genuinely attached to the labor market, and who are unemployed because of conditions therein over which they have no control. All of the provisions of the act must be read and construed with this public policy in mind."

In the instant case the referee, the appeal board, and the circuit judge reviewing the matter on certiorari, concluded that Thomas had voluntarily separated himself from his employment. The undisputed facts fully justify such conclusion. He deliberately violated the law, knowing what the consequences might be if his offense was detected and prosecution instituted. Of his own volition he assumed the risk incident to his conduct.

It will be noted that section 2 of the Michigan statute, above quoted, states that the unemployment reserves contemplated by the act are set aside "to be used for the benefit of persons unemployed through no fault of their own." Like declarations are found in the statutes of other States providing for unemployment compensation. In *Department of Labor and Industry* v. *Unemployment Compensation Board of Review,* 148 Pa Super 246 (24 A2d 667), an employee arrested and convicted of larceny, for which offense he served 62 days in jail, was denied compensation. During his incarceration his employer had hired another to do the work previously performed by such employee. The court, reviewing the matter on appeal, referred to the declaration of policy in the statute, analogous to that in the Michigan act, saying, in part:

"The reserves to be thus set aside are to be contributed by employers only—see article 3. None

are to be contributed by or charged against employees. Therefore, apart from the benefits *conferred* on them by the act, they have no individual monetary interest in the reserves, such as might result if they had made contributions to them. And the basic principle at the root of the act, justifying the exercise of the police powers of the Commonwealth in its enactment, is that the reserves thus set aside from the enforced contributions of employers are to be used for the benefit of persons *unemployed through no fault of their own.* Subsequent provisions as to eligibility (section 401), or ineligibility (section 402), for compensation must all be read and construed as subject to this basic and fundamental declaration. If it is clear that a person's unemployment is the result of *his own fault,* he is not eligible for compensation under the act, irrespective of his willingness to apply for, or accept suitable employment when offered to him, or that his leaving work was not wholly voluntary."

In *Michalsky Unemployment Compensation Case,* 163 Pa Super 436 (62 A2d 113), the court affirmed an order denying compensation under the Pennsylvania statute to an employee who was sent to jail for not paying alimony. It was held in substance that the employee had voluntarily separated himself from his employment and was not entitled to the benefits of the act. In reaching its conclusion the court referred with approval to the prior decision in *Department of Labor and Industry* v. *Unemployment Compensation Board of Review, supra,* stating (p 439) that one who "has become unemployed by reason of his conviction and imprisonment for crime is ineligible for unemployment benefits." Among other decisions relating to statutory disqualification for compensation when the unemployment is not involuntary are *Beaman* v. *Bench,* 75 Ariz 345 (256 P2d 721), and *Anson* v. *Fisher Amusement Corporation* (December, 1958), 254 Minn 93 (93 NW2d 815).

Counsel have called attention to the decision of this Court in *Copper Range Company* v. *Unemployment Compensation Commission,* 320 Mich 460. In that case the employer, claiming to be faced with financial difficulties, sought to obtain the consent of its employees to a reduction in wages. The proposition was submitted to the bargaining committee of the union representing the employees, but was rejected by vote of members of the union. Thereafter the company ceased operations. It may be noted that the company proposal in effect contemplated a modification or partial abrogation of the contract, previously executed, governing its relations with the employees. Under these circumstances this Court declined to hold that the employees were disqualified from receiving unemployment compensation, such conclusion being based on the fact that said employees had continued to work as long as work was available to them, and that the rejection of the company's proposal did not constitute a voluntary separation from their employment. Under the facts involved the decision is not in point in the present controversy. The same situation obtains with reference to the case of *Tucker* v. *American Smelting & Refining Co.,* 189 Md 250 (55 A2d 692), which involved issues arising from a labor dispute.

The denial of compensation in the instant case is in accord with the interpretation of the statute by the defendant appeal board in prior decisions and with circuit court rulings on appeal. It is also in accord with the rulings of administrative bodies and of courts in other States. The generally accepted interpretation of statutory provisions analogous to those of the Michigan act here involved precludes the payment of unemployment benefits to employees who have been convicted of violations of law and required to serve jail or prison sentences by way of penalty. Such separation from employment is prop-

erly considered to result from the voluntary act of the employee or employees concerned, and as such within the purview of the disability provisions enacted by State legislatures. Such rule should be applied in the instant case. The Michigan statute may not properly be construed as authorizing payments from the "unemployment reserves" under circumstances of the character here involved. The circuit judge was right in sustaining the order of the defendant appeal board and the judgment entered should be affirmed, but without costs, questions of statutory interpretation being at issue.

VOELKER, J., concurred with CARR, J.