393 P.2d 152

James A. BEAMAN et al., comprising the Employment Security Commission of Arizona, and Merritt-Chapman & Scott Corporation, Appellants,

v.

Raymond E. AYNES, Appellee.

No. 7725.

Supreme Court of Arizona.

En Banc.

June 10, 1964.

Rehearing Denied June 30, 1964.

Robert W. Pickrell, Atty. Gen., by Richard J. Daniels and James S. Tegart, Asst. Attys. Gen., for appellant Commission.

Shimmel, Hill, Kleindienst & Bishop, Phoenix, for employer, Merritt-Chapman & Scott Corporation.

Minne & Sorenson, Phoenix, for appellee.

BERNSTEIN, Justice.

This appeal is taken from a decision of the Superior Court reversing a final order of the Employment Security Commission of Arizona finding Raymond E. Aynes, claimant-appellee, disqualified for unemployment benefits under the Employment Security Act of Arizona. Hereinafter the parties will be referred to as the commission, claimant and the employer.

The claimant is a construction laborer and union member who worked for several weeks as a carpenters' helper at the Glen Canyon Dam for an employer who had entered into a collective bargaining agreement with claimant's union. Under the terms of this agreement the claimant working as a carpenters' helper was to be paid $3.215 per hour while doing such work, but $3.555 per hour while operating a jack hammer. If he operated a jack hammer less than four hours in one day he was to be paid at the higher rate for four hours and if he operated it more than four hours in any one day he was to be paid the higher rate for eight hours.

The record shows that for about four weeks claimant did both these types of work sporadically and was paid at the higher rate for the entire forty hour week. A new foreman took over his supervision and he was only paid at the higher rate for four

out of the next five days. When he complained to the foreman that he was entitled to the full five days at the higher rate because of the hours he worked on the jack hammer, he was told that it would be made up the next week, but it was not. The next week his check was short and he complained again, receiving the same answer. The third week when he got his pay check it was also short $2.72 so he again went to the foreman and was informed that not only was the employer not going to make up the shortage but in the future they intended to pay the higher rate only for the exact time, "down to the minute," that he worked with a jack hammer. He then told the foreman that he was quitting because of the shortage in his pay, and in fact did quit.

There was no union steward on his shift so he did not report this disagreement to his union until he returned to Phoenix where his union local is located. His grievance was processed by the union and the employer subsequently paid $8.16, the amount his checks had been short the last three weeks.

The claimant filed his claim for unemployment compensation, the end result of which was that the commission held that he had voluntarily quit without good cause, and assessed the resultant disqualification and deduction of weekly benefit amount. On appeal to the Superior Court the commission's order was reversed and this appeal is taken by the commission.

The commission argues that because claimant is a member of the union and is working under the terms of a collective bargaining agreement which provides a procedure for the processing of grievances, he was bound to follow such procedure in this dispute. In finding he quit work without good cause the commission concluded this was true.

Before a claimant is entitled to benefits under the Unemployment Compensation Law it must first be shown that he is eligible for such compensation within the meaning of the Act. Beaman v. Safeway Stores, 78 Ariz. 195, 277 P.2d 1010. There is no question but what the claimant here is eligible and this point is not disputed. The only issue is whether the circumstances surrounding his termination are such as to make him disqualified from full benefits under A.R.S. § 23–775, Subsec. 1, which reads as follows:

"§ 23–775. Disqualification from benefits

"An individual shall be disqualified for benefits:

"1. For the week in which he has left work voluntarily without good cause in connection with his employment, if so found by the commission, and in addition to the waiting week, for the four weeks which immediately

follow such week, and his maximum benefit amount shall be reduced by an amount equivalent to four times his weekly benefit amount."

The claimant argues that he sustained a substantial reduction in earnings and that his employer failed to pay wages when due, citing this as "good cause" under the statute. He further argues that the amount of wages involved could be as high as $10 per week if the foreman's threat to pay the higher rate only for the exact time he operated a jack hammer were carried out.

In this appeal the claimant relies heavily on the decision in Bunny's Waffle Shop v. California Employment Commission, 24 Cal.2d 735, 151 P.2d 224, in which case claimants were found to have quit for good cause when their wages were reduced twenty-five percent. The views expressed in that opinion are not applicable here because much more was involved in that case than a mere reduction in wages. A number of employers were trying to get the union to bargain with them collectively, and the particular employer involved imposed the wage reduction and other less favorable conditions of employment on his employees as a means of coercing the union to submit to the employer's demands. The court found that the employer was using these changes as an economic weapon to force union compliance with their demands which was tantamount to a lock-out.

We believe the cases of In re Anderson, 39 Wash.2d 356, 235 P.2d 303, and Hessler v. American Television and Radio Co., 258 Minn. 541, 104 N.W.2d 876, to be much more in point. In these cases the claimants quit there employment when faced with reduced wages and less favorable working conditions. Their terminations were held to be voluntary and without good cause thereby disqualifying them from unemployment benefits.

We have held claimants to be disqualified under A.R.S. § 23–775, Subsec. 1, supra, where they were union members working under a collective bargaining agreement which provided for all eligible employees to take two weeks vacation at a certain time. Beaman v. Bench, 75 Ariz. 345, 256 P.2d 721. The employer therefore ceased operations during this period and claimants were workers who had not been employed long enough to be eligible for such paid vacation. We held such unemployment to be voluntary as claimant's own union insisted upon this vacation arrangement and the claimants were deemed to have agreed to any shutdown compelled by the employer's contractual obligations under the collective bargaining agreement.

We were again confronted with this statutory provision in Employment Security Commission v. Magma Copper Company,

90 Ariz. 104, 366 P.2d 84, where the claimants were retired by the employer under the terms of a collective bargaining agreement which provided for such retirement. Our decision that those claimants were not disqualified was based, in part, upon the legislative purpose set forth in A.R.S. § 23–601, and the fact that if the collective bargaining agreement were construed as an agreement by claimants to become voluntarily unemployed upon reaching retirement age, it would be violative of A.R.S. § 23–784 which provides:

"No agreement by an individual to waive, release or commute his rights to benefits or any other rights under this chapter shall be valid."

It is to be noted that in the Magma Copper Company opinion, supra, we distinguished it from the Beaman v. Bench case, supra, partly on the basis that the latter involved only a vacation period which is commonly regarded as part of an employee's overall compensation.

The claimant, by and through his agent, the union, entered into a collective bargaining agreement with the employer. This agreement provided a grievance procedure for the settlement of disputes between the employer and the union or its individual members. The evidence here indicates that subsequent to his termination the claimant utilized the grievance procedure provided therein, and as a result, the employer paid him the $8.16 which he claimed was due. Beaman v. Bench, supra.

■ The claimant had agreed with the employer, by virtue of the collective bargaining agreement, to settle disputes in the manner provided in the union contract. He was not prohibited from attempting to settle the matter on an individual basis between himself and his foreman. The National Labor Relations Act, 29 U.S.C. § 159(a) specifically provides his right to do so. But when he was unable to solve the dispute through his own efforts he was bound to follow the grievance procedure provided in his agreement before taking any drastic action. He, of course, had a perfect right to terminate his employment as he did, but in order to qualify for unemployment benefits he must be unemployed through no fault of his own. Beaman v. Safeway Stores, supra, and Beaman v. Bench, supra. He is therefore disqualified under A.R.S. § 23–775, Subsec. 1. The fact that it may have required more effort to bring the matter to his union's attention, as there was no steward on his shift, is of no consequence.

■ The decision of the Employment Security Commission is supported by competent, material and substantial evidence, is not arbitrary or capricious and is not affected by error of law; therefore, it should have been affirmed. Accordingly, the judgment of the lower court is reversed

with instructions to enter judgment affirming the decision of the commission.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concurring.