621 P.2d 52

Barbara PHILLIPS, Plaintiff–Appellant,

v.

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an agency; and Uniservice, Inc. a/c of Flowing Wells Public School District # 8, Defendants–Appellees.

1 CA–UB 023.

Court of Appeals of Arizona,
Division 1,
Department C.

Dec. 16, 1980.

Quigley & Quigley, P. C. by John M. Quigley, Tucson, for plaintiff–appellant Barbara Phillips.

Robert K. Corbin, Arizona Atty. Gen., by J. David Rich, Asst. Chief Counsel, Phoenix, for defendant–appellee Arizona Dept. of Economic Sec.

## OPINION

DONOFRIO, Judge.

This is an appeal from a decision of the unemployment insurance appeals board of the Arizona Department of Economic Security which disqualified appellant from benefits for a period of ten weeks.

On May 16, 1978, appellant Barbara Phillips was discharged from her employment as Food Service Director of Flowing Wells Public School District # 8. She filed a claim for unemployment benefits. A deputy determined that she was disqualified for benefits on July 3, 1979. Appellant took her case to the appeal tribunal of the Department of Economic Security. After an evidentiary hearing the appeal tribunal reversed the deputy's determination and found that appellant was entitled to bene-fits. The employer petitioned for review to the unemployment insurance appeals board. That body, after reviewing the record, reinstated the deputy's determination and found that appellant was discharged for misconduct connected with the work. Pursuant to A.R.S. § 41–1993, appellant brought the matter before this Court.

This Court does not sit as a trier of fact and will affirm the decision of the appeals board if supported by any substantial evidence in the record. *Beaman v. Aynes*, 96 Ariz. 145, 393 P.2d 152 (1964); *Richert v. Employment Security Commission*, 20 Ariz. App. 99, 510 P.2d 410 (1973).

Appellant's disqualification for benefits stems from the circumstances surrounding her discharge as Food Service Director from Flowing Wells Public School District # 8, involving an angry exchange of words between herself and the District Superintendent. However, before specifically discussing the facts in this particular case, we will look to some of the pertinent statutory and regulatory provisions.

A.R.S. § 23–619.01, in part, provides: "A. 'Misconduct connected with the employment' means any act or omission by an employee which constitutes a material or substantial breach to the employment or contract of employment or which adversely affects a material or substantial interest of the employer.

B. 'Wilful or negligent misconduct connected with the employment' includes, but under no circumstances is limited to, the following:

\* \* \* \* \* \*

4. Insubordination, disobedience, repeated and inappropriate use of abusive language, assault on another employee or repeated fighting, refusal to accept an assignment to work at certain times or to perform certain duties without good cause, refusal to follow reasonable and proper instructions given by the employer, or intentional or negligent destruction of the employer's property."

The rules of the Department of Economic Security further expand upon the statutory definition of misconduct. A.C.R.R. R6–3–5105, *infra*, defines misconduct in connection with attitude toward employer; while A.C.R.R. R6–3–51255, *infra*, defines misconduct in terms of insubordination. We will discuss these provisions in connection with the facts presented in this case. The appellant's discharge was precipitated by the scheduling of a teacher's retirement breakfast on a Monday morning. Appellant became upset because of the difficulty in scheduling such a breakfast together with the cafeteria's other demands. She telephoned the District Superintendent's office to discuss with him her displeasure at the scheduling of the breakfast. When she learned that he was not in she went directly to his office. She was told that he was leaving but she was able to catch up with him in the parking lot where she engaged the Superintendent in conversation.

The Superintendent's testimony indicates that appellant became hysterical and abusive in the course of this conversation. Although she did not refuse to prepare the retirement breakfast, the argument made it clear that she was uncooperative. Additionally, appellant told her superior never again to send an underling to her with orders, referring to the fact that she had received the directive concerning the breakfast from another member of the Superintendent's staff. The Superintendent testified, "she then got very demanding and abusive toward me * * * I had to interrupt her several times. I finally told her that if she did not carry out the directive that she had been given * * * it would mean her job, and after a very prolonged interchange of words, it was left at that."

The above–described exchange did not create the sole reason for appellant's discharge. The record reflects that disharmony had been created by appellant in her working environment on several occasions preceding this precipitating event. Additionally, appellant's conduct subsequent to the interchange figures in the determination that her behavior constituted misconduct. After the exchange with the Superintendent, appellant returned to her duties and begin scheduling the breakfast. However, the evidence shows that she accompanied these activities with tearful complaints to co–workers and teachers concerning the situation and her view of the Superintendent's action.

Several portions of the rules referred to earlier appear to apply directly to the fact situation presented in this case. A.C.R.R. R6–3–5105(A)(2) states:

"A. A.R.S. § 23–775 of the Employment Security Law of Arizona provides in part:

'An individual shall be disqualified for benefits: For the ten consecutive weeks immediately subsequent to first filing a valid claim after he has been discharged for willful or negligent misconduct connected with the work, if so found by the department, and in addition his maximum benefit amount shall be reduced by an amount equivalent to eight times his weekly benefit amount.'

1. Definition of 'Misconduct'

a. 'Misconduct connected with the work' means any act or omission by an employee which constitutes a material or substantial breach of the employee's duties or obligations pursuant to the employment or contract of employment or which adversely affects a material or substantial interest of the employer.

b. American Jurisprudence defines 'Misconduct Precluding Payment of Unemployment Insurance' as follows: 'Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to

manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.'

2. A claimant need not have actually acted with intent to wrong his employer to result in a finding of misconduct connected with the work. Misconduct may be established if there is indifference to and neglect of the duties required of the worker by the contract of employment, or a violation of any material lawful duty required under the employment contract when such duty is expressed or impliedly set forth to the worker and the facts show that the worker should have reasonably been able to avoid the situation which brought about his discharge."

A.C.R.R. R6–3–5145(A)(1), (4) and (B)(1), (4) state:

"A. General (Misconduct 45.05)

1. In order for an act by a worker to be considered misconduct, it must be established that the results of the act had, or could have had, an adverse affect on the employer's interests.

\* \* \* \* \* \*

4. In order for misconduct to be established the employer need not have actually suffered damage as a result of the worker's act, the potentiality for damage must also be considered. In many cases it may be established that his interests could have been adversely affected by the commission or omission of the act.

\* \* \* \* \* \*

B. Agitation or criticism (Misconduct 45.1)

1. When a worker expresses dissatisfaction with his employer or stirs up resentment against his employer, the conditions under which the action occurs and the worker's reason for taking such action will determine whether misconduct connected with the work is established.

\* \* \* \* \* \*

3. When a worker creates or expresses dissatisfaction, discontent, or resentment toward his employer for purposes other than to remedy problems, or improve working conditions, there is a strong indication of misconduct.

4. Misconduct may be found in the actions of a worker whose unreasonable agitation or criticism stemmed from an intent to resolve grievances or to improve work conditions when such actions result in insubordination, material neglect of duties, etc."

A.C.R.R. R6–3–51255(1)(b) and (2):

"General (Misconduct 255.05)

1. An employer has the right to expect that reasonable orders, given in a civil manner, will be followed and that a supervisor's authority will be respected and not undermined. There is no precise rule by which to judge when a dispute with a supervisor constitutes insubordination if insolence, profanity, or threats are not involved. The pertinent overall consideration is whether the worker acted reasonably in view of all the circumstances. Some examples of insubordination are:

a. Refusal to follow reasonable and proper instructions; or

b. Insolence in actions or language, profanity, or threats toward a supervisor without due provocation; or

c. Refusal to accept assignment to suitable work.

2. Incompatibility with a supervisor does not of itself constitute insubordination, neither does an employee's emphatic insistence on discussing the situation if he is acting in good faith. Misconduct may exist if the worker resorts to hot–tempered remarks, threats, or insolence, without due provocation."

 Although appellant argues that there has been no showing that her conduct was wilful or that she ultimately refused to follow the directive given by her superior, we find that the evidence reasonably supports the determination of the appeals board that appellant's behavior constituted

misconduct under the statutory and regulatory provisions that we have discussed.

 Finally, appellant challenges the form in which the decision of the appeals board was rendered, arguing that the six–page decision breaches the requirement of A.R.S. § 23–674(C) that "[t]he findings of fact shall consist of a concise statement of the conclusions upon each contested issue of fact." We do not read the statutory provisions as limiting the appeals board from presenting the facts to the extent necessary for reaching their decision. We have examined the decision in this case and find no breach of this format required by statute.

For the reasons stated above, the decision of the unemployment insurance appeals board is affirmed.

OGG, P. J., and O'CONNOR, J., concur.