PHILLIPS *v.* EMPLOYMENT SECURITY COMMISSION.

1. UNEMPLOYMENT COMPENSATION—TAXICAB OPERATOR—LICENSES—
   DISQUALIFICATION FOR BENEFITS.

   The fact that taxicab driver lost license to operate a taxicab
   because of violations of conditions upon which license was
   granted, and thereby was unable to continue driving, justified
   finding by the employment security commission that he was
   disqualified for unemployment compensation benefits (CLS 1961,
   §§ 421.28, 421.29).

2. COSTS—PUBLIC QUESTION—UNEMPLOYMENT COMPENSATION.

   No costs are allowed in taxicab operator's proceeding to obtain
   unemployment compensation benefits, where public question
   was involved.

   KAVANAGH, C. J., and BLACK and SOURIS, JJ., dissenting.

Appeal from Wayne; Baum (Victor J.), J. Submitted October 11, 1963. (Calendar No. 38, Docket No. 50,006.) Decided June 1, 1964. Rehearing denied July 8, 1964.

Jefferson Clay presented his claim for unemployment compensation benefits which was granted. Certiorari by Eunice Phillips, employer, against the Michigan Employment Security Commission, its Appeal Board, and Jefferson Clay, challenging the award. Judgment for defendants, upholding deter-

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds §§ 34, 38.
[2] 14 Am Jur, Costs § 91.

mination and decision of board.   Plaintiff appeals.
Reversed.

*Stewart & Phillips* (*Thomas H. Stewart,* of counsel), for plaintiff.

*Weller, Summer & Feder* (*Morris Weller,* of counsel), for defendant Clay.

KELLY, J.   The defendant-appellee Jefferson Clay drove a taxicab for the plaintiff-appellant, Eunice Phillips, until his license to drive was revoked by the secretary of State.

Clay's application for unemployment compensation benefits was denied by the Michigan employment security commission after a finding that he was unavailable for his customary work.   The commission modified this finding and determined that appellee Clay's separation from his job was for misconduct in connection with the work.

The referee modified the commission's finding by ruling that Clay was unavailable for his customary work but that he was not guilty of misconduct in connection with his work.   The claimant appealed, and the appeal board held that claimant was not disqualified for benefits.[*]

The employer appealed to the circuit court and from a judgment affirming the decision of the appeal board this appeal is taken by the plaintiff-employer.

The trial court, in affirming the Michigan employment security commission appeal board, stated:

"For a person to come within this provision, there must be a desire on his part to leave work.   His leaving of work must be voluntary in this sense:   It is not enough that his physical conduct in leaving work

---

[*] For sections of statute requiring availability and enumerating reasons for disqualification, see CLS 1961, §§ 421.28, 421.29 (Stat Ann 1960 Rev §§ 17.530, 17.531).—REPORTER.

be volitional. For there to be a voluntary leaving of work, the man must act out of his own desire and without any external compulsion. In this case there was external compulsion. This man was compelled by the law to cease employment. He could only continue to drive his cab if he violated the law. There is nothing to show that he had the remotest or the least desire or inclination to leave his job as a cab driver. The entire record makes it clear that he was compelled to do so by reason of legal authorities having deprived him of his license to drive.    *    *    *

"There is nothing in the facts before us to suggest that Clay deliberately and of his own desire gave up his driver's license.    *    *    *

"There is nothing in this case to show that at any time Clay behaved in such a way as to deliberately and by his own desire bring about a loss of his driver's license. In fact, one has reason to believe that it was very much against his wishes and desires that he lost his driver's license. It cannot be said that immediately before he received each traffic ticket he knew that his contemplated conduct would cost him his license and his job and that he pursued such conduct nevertheless."

We disagree with the trial court. By his own actions defendant Clay deliberately committed those acts that resulted in his losing his driver's license.

In *Bell* v. *Employment Security Commission,* 359 Mich 649, 652, this Court said:

"We may concede that no man in his right mind would 'intend' to fall asleep while on duty in a boiler room. But also we must hold that a man intends the normal consequences of his acts."

Clay's license to operate the taxicab was granted by the State and accepted by the licensee subject to all reasonable conditions imposed by the State in granting the license. See *People* v. *Thompson,* 259 Mich 109, wherein we said (pp 123, 120):

"In accepting the license from the State, one must also accept all reasonable conditions imposed by the State in granting the license. The State has seen fit to impose as such conditions the various provisions embodied in section 30. These provisions are not only humanitarian, but obviously contribute to the mutual welfare and safety of all users of the highways."

" 'When a statute does not make *intent* an element of the offense, but commands an act to be done or omitted which, in the absence of the statute, might have been done or omitted without culpability, ignorance of the fact, or state of things contemplated by the statute, will not excuse its violation.' "

The judgment of the lower court and the decision of the appeal board are reversed, and the determination of the commission holding claimant disqualified for benefits is reinstated.

Reversed. No costs, a public question being involved.

DETHMERS, SMITH, and O'HARA, JJ., concurred in result.

SOURIS, J. (*dissenting*). By summary reversal of the circuit judge's thoughtful and eminently correct ruling, Mr. Justice KELLY sentences a 57-year-old taxicab driver to the penalty of disqualification from receiving unemployment compensation for the duration of his unemployment on the ground that it is *misconduct,* within the meaning of the employment security commission act,[*] for a taxicab driver, for whatever reason, to lose his right to drive a motor vehicle. This result was rejected as ludicrous by the referee; it was rejected, likewise, by the appeal board, unanimously; finally, notwithstanding failure

---

[*] CLS 1961, §§ 421.28, 421.29 (Stat Ann 1960 Rev §§ 17.530, 17.531).

of the employer and the commission even to urge such misconduct disqualification in the circuit court, the circuit judge considered the possibility and also rejected it in the following language:

"The cases decided by our Supreme Court indicate that for a misconduct disqualification there must be an element of wilfullness and intention to injure or to damage the employer. The cases also make it clear that such malevolent intention must exist at the time of and in connection with work. In this particular case neither of these elements necessary for misconduct disqualification are present. First there does not appear to be any testimony in this case from which it could be found that this man intended to injure his employer. Next, the testimony makes it rather clear that this man lost his license because he failed to pay tickets. There is nothing in the record which would tend to show that this man lost his job because of some traffic offense that he committed in the course of driving. He lost his license because he failed to pay tickets. We don't know whether these tickets are for offenses while he was driving on the job or not. He lost his licence for failure to pay the tickets. This failure is something that did not occur on the job or necessarily have close connection with the job. The burden of proving disqualification for misconduct is upon the person urging it. Here, there is no evidence tending to show that the improper conduct occurred on the job or in some close relationship to it. Therefore, we do not have a situation which may be described as being 'connected with work' within the meaning of the statute."

Notwithstanding the unanimous rejection of such a result by the referee, by the appeal board members and by the circuit judge, Justice KELLY invokes the harsh sanction of disqualification for misconduct. And he does so without so much as a description (from the record, of course) of what he calls the "ac-

tions defendant Clay deliberately committed * * * that resulted in his losing his driver's license" and that, in Justice KELLY's view, constitute statutory misconduct. This is what I find in the record,—all of the evidence pertinent to the "actions defendant Clay deliberately committed":

"*Q.* What happened that you couldn't work after April 18th?

"*A.* For the simple reason I was arrested, you know, and the police officers taken me to jail; and then I had a friend that lent me the money, loaned me the money to pay up the back tickets that I owed.

"*Q.* When were you arrested; after the 18th?

"*A.* Yes, sir, after that.

"*Q.* You were held in the county jail?

"*A.* I was held there for about 2 hours.

"*Q.* How much did you pay off?

"*A.* I paid off $35.

"*Q.* You paid off 35?

"*A.* Yes, sir.

"*Q.* What happened then?  How much did you owe altogether?

"*A.* Well, that's what they told me in the court that's all I owed.  Come to find out 2 or 3 weeks later they sent me another notice, said I owed 2 more tickets.  I didn't understand that.

"*Q.* When they arrested you and you paid off the $35, did they give you back your license?

"*A.* No, sir.

"*Q.* They held your license?

"*A.* Well, the license had expired for 3 days.  I was driving on a permit until the license became valid.  You know what I mean.  It takes 3 weeks for your license to become valid.

"*Q.* To reinstate you.  How much more did they claim you owe?

"*A.* They said I didn't owe any more.  That's why they let me loose.

"*Q.* Well, I mean after. You stated you got a letter.

"*A.* Yes, sir, I got a letter stating I owe 2 more tickets. I think that's why they're holding the license.

"*Q.* How much more do you owe?

"*A.* Well, 1 was a moving violation. I think it come to about $5—

"*Q.* And how much was the other one?

"*A.* The other one was $3. One's behind. That run around, was about $15.

"*Q.* Did you try to straighten this thing out?

"*A.* Well, I can't. I haven't earned any money since I got in bad with the police on those tickets.
\* \* \*

"*Q.* So the only thing that held you up was your lack of a chauffeur's license?

"*A.* Yes, but the only thing, I was supposed to have a hearing on the 12th to go before a referee, just like I am here.

"*Q.* This month or next month?

"*A.* Oh, September. I don't know how I'm going to come out, but the lady told me at the desk that I might be able to receive some kind of a permit for 14 or 15 days.

"*Q.* How many points did you have against you?

"*A.* They told me it was 13 points.

"*Q.* Why didn't you get an attorney?

"*A.* Well, that's the trouble: There is such a little bit of money to be made driving a cab I didn't have the money for an attorney. \* \* \*

"*Q.* Your license was revoked until August of 1962; is that correct?

"*A.* Yes, sir. That's as close as I can get to it, sir.

"*Q.* And you have an appeal with the appeal board at the secretary of State's office?

"*A.* Yes, sir, I've got an appeal with them.

"*Mr. Stewart*: Well, that's about the size of it. I mean, if he had a license—

*"The Referee* (interposing): Would you have work for him if he gets his license back?

*"Mr. Stewart*: Yes, if he has a license, I'm pretty sure that Mr. Phillips will—"

If the foregoing evidence brings this case within the meaning of misconduct as defined by this Court in *Cassar* v. *Employment Security Commission,* 343 Mich 380, Justice KELLY or 1 of his concurring brothers should say so. *Per contra,* if by what this Court does today a new definition of statutory misconduct is intended to be announced, it should not be done *sub silentio.* For me, either result would be absurd.

The appeal board ruled:

"It is held that the claimant was separated from employment under nondisqualifying circumstances and no disqualification is imposed under either section 29 (1) (a) (1) or (2) of the act.

"It is further held that the claimant was available for work of a character which he is qualified to perform by past experience or training and of a character generally similar to work for which he has previously received wages and no ineligibility is imposed within the meaning of section 28(c) of the act."

The circuit judge affirmed and so should we, there being competent evidence to support the board's findings of fact and its conclusions of law being sound. For *unanimous* elaboration of the circuit court's, and our, properly limited role in review of such administrative decisions, see *Wickey* v. *Employment Security Commission,* 369 Mich 487, 489–493, 499, and 500.

KAVANAGH, C. J., concurred with SOURIS, J.

BLACK, J., concurred in result.

O'Hara, J. (*concurring*). If as my able and perceptive colleague, Mr. Justice Souris, writes, a ludicrous result here was reached by the claims interviewer, I think it is because he has ludicrous precedent from higher echelons of review upon which to depend for guidance. I have no inclination to attempt to reconcile decisions of this Court which award employment security benefits to a claimant who loses his employment because he was jailed for driving a motor vehicle while intoxicated and hence could not report for work (*Thomas* v. *Employment Security Commission,* 356 Mich 665) and withholds them from an employee who fell asleep on the job (*Bell* v. *Employment Security Commission,* 359 Mich 649).

We ought to back up and start over. Claims interviewers, referees, and the appeal board of the commission have been led through a labyrinth of decisions of this Court which no rational mind, lay or legal, could possibly reconcile. In the declaration of policy in the act* the legislature very pointedly included this statement:

"*Involuntary* unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his family, to the detriment of the welfare of the people of this State." (Emphasis supplied.)

For years this Court interpreted this to mean that the benefits under the act were "for the benefit of those who were unemployed through no fault of their own." (*Kalamazoo Tank & Silo Co.* v. *Unemployment Compensation Commission,* 324 Mich 101.) The sooner we return to this eminently sensible criterion and repudiate the legalistic distinctions

---

* CL 1948, § 421.2 (Stat Ann 1960 Rev § 17.502).

without differences we made in later cases, the better off claimants, employers and the administrators of the act will be.

Applying this basic test to the case at bar, it seems relatively clear that plaintiff, who made his living driving a taxi, had his license to operate a motor vehicle revoked by the State. The State had granted him this privilege and for his failure to comply with the laws relating to the conditions under which he could continue to enjoy the privilege, withdrew it. In consequence, he could not drive a car. Ergo, he became unemployed. If his unemployment was not his own fault, I am hard put to know whose fault it was. To me, claimant does not fall within the class of unemployed persons to whom the legislature intended benefits should be paid.

I concur in the result reached by Mr. Justice KELLY.

BLACK, J. (*dissenting*). Standing as before,* upon conviction that the "labyrinth of decisions" to which Justice O'HARA refers has been manufactured by the denied yet perfectly visible process of *de novo* consideration and determination by our Court of unemployment benefit cases, I vote to affirm the appeal board's decision and the circuit court's affirming decision.

When the circuit court issues its constitutionally authorized writ of certiorari to the appeal board, that court is not entitled to raise and decide any decisive question of law the petition for writ and the petitioner himself has not brought up for review. Here the circuit judge raised and decided the legal

---

* *Miller* v. *F. W. Woolworth Co.*, 359 Mich 342, 349–355; *Bell* v. *Employment Security Commission*, 359 Mich 649, 653, 654; *Lyons* v. *Employment Security Commission*, 363 Mich 201, 228–230; *Booker* v. *Employment Security Commission*, 369 Mich 547–551 (opinion of Justice ADAMS adopted by the writer); *Dynamic Manfrs.* v. *Employment Security Commission*, 369 Mich 556–560.

question several of my Brethren have seized upon for reversal (see quotation below of Judge Baum's opinion). If that question had been raised before the appeal board, and had it been raised in the petition for certiorari, I would opine upon it. That however was not done. I therefore abstain so far as that question is concerned.

Some day this Court will have to look in the mirror of its unemployment compensation decisions, thus to face the fact that too many of such decisions have been made of jury-like view that the claimants should or should not have compensation as prayed. Now let us read, from the record, the way this "misconduct connected with his work" issue came up in circuit. Judge Baum's opinion proceeds.

"There is a third possible issue here, although it has not been presented nor urged in argument. And this third possible issue is whether or not this man is disqualified under that portion of section 29 of the act which provides for disqualification where 'the employee has been discharged for misconduct connected with his work.' * * * This is a possible issue because in the course of the administrative proceeding below it was at times urged and at 1 point accepted by those having the power of administrative decision. However, neither the referee nor the appeal board found that the claimant was disqualified for misconduct in connection with his work and it is not urged here by any of the litigants that there is properly such a disqualification in this case.

"I'll deal with this third issue only because it was involved in this proceeding at 1 point and because some persons might believe that it is necessary to dispose of this issue for a complete disposition of all the issues in the case."

The appeal board's actual decision, decisively summarized, reads as follows:

"It is held that the claimant was separated from employment under nondisqualifying circumstances and no disqualification is imposed under either section 29(1) (a) (1) or (2) of the act.

"It is further held that the claimant was available for work of a character which he is qualified to perform by past experience or training and of a character generally similar to work for which he has previously received wages and no ineligibility is imposed within the meaning of section 28(c) of the act."

The proof assembled before the board justified, but of course did not dictate, its quoted finding that this claimant was separated from his employment "under nondisqualifying circumstances." At such point the judicial function comes to exhaustion and affirmance of the scrutinized administrative decision is in order. As said by the circuit judge below:

"The law enjoins me to leave undisturbed any finding of the appeal board, if there is any evidence in the record at all to support such a finding, and I suppose there is evidence to support the board's finding in favor of eligibility. The conclusions of law arrived at by the board likewise seem to be in order. For these reasons an order should enter affirming the decision of the board."

For elaboration of the rule to which Judge Baum and I both allude, see the *Miller Case, supra.* I adhere to *Miller* in full view of the nonauthoritative disjointures which appear in *Wickey* v. *Employment Security Commission,* 369 Mich 487, and in *Booker* and *Dynamic,* both *supra.*

ADAMS, J., took no part in the decision of this case.