EMPLOYMENT SECURITY COMMISSION v CHILDREN'S
HOSPITAL OF MICHIGAN

Docket No. 66478. Submitted December 6, 1983, at Detroit.—Decided
December 17, 1984.

Patricia A. Ponder obtained a temporary nursing license and was
employed by Children's Hospital of Michigan as a graduate
nurse. Thereafter, she twice took and failed the state licensing
examination which, if passed, would have qualified her as a
registered nurse. As a result she lost both her temporary
license and her employment. She applied for unemployment
benefits which were awarded. The award was affirmed by a
referee and by the Employment Security Board of Review. The
hospital appealed to Wayne Circuit Court, which reversed the
decision of the board of review. The court, Maureen P. Reilly,
J., held that the claimant's failure to maintain a prerequisite
for hire and for continued employment was deemed to be a
voluntary leaving without good cause attributable to the em-
ployer. The Employment Security Commission appealed. *Held:*

A claimant who fails to pass a required licensing examina-
tion and thus fails to maintain the prerequisite for hire and for
continued employment so that the employer is required by law
to terminate the employment relationship has, by such failure,
voluntarily left work without good cause attributable to the
employer under the statutory provision regarding disqualifica-
tion for unemployment benefits.

Affirmed.

T. M. BURNS, P.J., dissented. He would hold that the claimant
was not disqualified for benefits because the claimant was not
put to a choice between reasonable alternatives. Rather, the
decision of whether she passed the examination was within the
discretion of the examiners. Therefore, the termination of her
employment was not voluntary. Judge BURNS would reverse.

REFERENCES FOR POINTS IN HEADNOTES
[1] 76 Am Jur 2d, Unemployment Compensation § 93.
[2, 3] 76 Am Jur 2d, Unemployment Compensation §§ 52, 59.

Opinion of the Court

1. Unemployment Compensation — Appeal.

   The Court of Appeals may review questions of law or fact in an appeal from a decision of the Employment Security Board of Review, but the decision of the board of review may be reversed only if it is contrary to law or is unsupported by competent, material, and substantial evidence on the record (Const 1963, art 6, § 28).

2. Unemployment Compensation — Disqualification for Benefits — Voluntary Termination of Employment.

   A person who fails to maintain prerequisites for being hired and for continued employment so that the employer is required by law to terminate the employment relationship has thereby voluntarily left work without good cause attributable to the employer and is, therefore, disqualified for unemployment compensation benefits (MCL 421.29[1][a]; MSA 17.531[1][a]).

Dissent by T. M. Burns, P.J.

3. Unemployment Compensation — Disqualification for Benefits — Voluntary Termination of Employment.

   *The word "voluntary", as used in determining the disqualification of a person for unemployment compensation benefits because of voluntary termination of employment, connotes a decision by the person based upon a choice between alternatives which ordinary people would find reasonable, not mere acquiescence to a result imposed by physical and economic facts beyond his control (MCL 421.29[1][a]; MSA 17.531[1][a]).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Patricia L. Sherrod,* Assistant Attorney General, for the Employment Security Commission.

*Charlene Canvasser Brooks,* for Children's Hospital of Michigan.

Before: T. M. Burns, P.J., and MacKenzie and R. Robinson,* JJ.

MacKenzie, J. This is an unemployment compensation case in which we must decide whether

* Retired circuit judge, sitting on the Court of Appeals by assignment.

an employee who is terminated for failure to meet state licensing requirements is entitled to receive benefits.

Appellant, the Michigan Employment Security Commission, appeals as of right from an order of the Wayne County Circuit Court reversing the decision of the Michigan Employment Security Board of Review. The board of review had affirmed a MESC referee's determination that Patricia A. Ponder was eligible for unemployment benefits.

After her graduation from a registered nursing program, claimant obtained a temporary license pursuant to MCL 333.16181; MSA 14.15(16181) and began working for appellee Children's Hospital of Michigan as a graduate nurse on July 17, 1978. Thereafter claimant twice took the state licensing examination which, if passed, would qualify her as a registered nurse. She failed both times. As a result, claimant necessarily lost both her temporary license and, on May 24, 1979, her employment with the hospital.

The claimant thereafter applied for unemployment benefits, which were approved on June 13, 1979. Redeterminations upholding the award of benefits to claimant were subsequently issued by the MESC, and the hospital timely requested a referee hearing. In an opinion dated May 2, 1980, the referee affirmed the MESC; this ruling was in turn affirmed by the board of review on January 21, 1982. The Wayne County Circuit Court reversed the board's decision on appeal, holding that, under MCL 421.29(1)(a); MSA 17.531(1)(a), the claimant's failure to "maintain a prerequisite for hire and for continued employment * * * must be deemed to be a 'voluntary leaving without good cause attributable to the employer' ".

On appeal from decisions of the board of review, this Court may review questions of law or fact.

Const 1963, art 6, § 28; MCL 421.38; MSA 17.540; *Chrysler Corp v Sellers,* 105 Mich App 715, 720; 307 NW2d 708 (1981). However, the decision of the board of review may be reversed only if it is contrary to law or is unsupported by competent, material, and substantial evidence on the record. *Sellers,* p 720.

The sole issue presented here is whether a claimant whose failure to pass a licensing examination necessitates the termination of her job can be said to have "voluntarily" left her employment under MCL 421.29(1)(a); MSA 17.531(1)(a), which provides:

"(1) Grounds. An individual shall be disqualified for benefits in all cases in which he:

"(a) Has left work voluntarily without good cause attributable to the employer or employing unit."[1]

Our inquiry begins with a brief review of the public policy behind the passage of the Michigan Employment Security Act, for its provisions "must be read in the light of the purpose of the Legislature in enacting it". *I M Dach Underwear Co v Employment Security Comm,* 347 Mich 465, 471; 80 NW2d 193 (1956). The "Declaration of Policy" as found in § 2 of the act, MCL 421.2; MSA 17.502, says:

"Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing

[1] MCL 421.29(1); MSA 17.531(1) has been amended by the Legislature numerous times since the present action arose. See 1980 PA 358, § 1; 1982 PA 535, § 1; and 1983 PA 164, § 1. These changes would in no way affect our analysis here, however.

force upon the unemployed worker and his family, to the detriment of the welfare of the people of this state. Social security requires protection against this hazard of our economic life. *Employers should be encouraged to provide stable employment.* The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through *no fault of their own,* thus maintaining purchasing power and limiting the serious social consequences of relief assistance, is for the public good, and the general welfare of the people of this state." (Emphasis added.)

The act, therefore, was intended primarily for the benefit of those who are involuntarily unemployed, *i.e.,* those who "are unemployed because of conditions [in the labor market] *over which they have no control". Dwyer v Unemployment Compensation Comm,* 321 Mich 178, 188; 32 NW2d 434 (1948). (Emphasis added.)

Appellant MESC relies primarily on *Thomas v Employment Security Comm,* 356 Mich 665; 97 NW2d 784 (1959), for its position that in order to be disqualified under § 29(1)(a) an employee must intend to leave his job, or otherwise deliberately or negligently set in motion conditions which inevitably lead to his dismissal. In *Thomas,* an employee was arrested en route to work for driving his automobile without an operator's license. Because of his subsequent conviction and incarceration, he was unable to report for work and his employment was terminated by his employer shortly thereafter. Addressing whether this sequence of events constituted leaving work voluntarily, the Court stated:

"The voluntary assumption of a risk which an employee knows may, but he trusts and assumes will not, keep him from work is not the voluntary leaving of his work. Doing an act, even though voluntarily, which

results, contrary to the doer's hopes, wishes and intent, in his being kept forcibly from his work is not the same as voluntarily leaving his work. The statute mentions the latter, but not the former, as an act disqualifying for benefits." *Thomas, supra,* p 669.

Numerous other Michigan cases have since followed the *Thomas* rationale in holding that a voluntary act by an employee which results in his or her termination is not necessarily a voluntary leaving. See, *e.g., Sullivan v Employment Security Comm,* 358 Mich 338; 100 NW2d 713 (1960);[2] *Wickey v Unemployment Security Comm,* 369 Mich 487; 120 NW2d 181 (1963); *Larson v Employment Security Comm,* 2 Mich App 540; 140 NW2d 777 (1966), and *Laya v Cebar Construction Co,* 101 Mich App 26; 300 NW2d 439 (1980).

Appellee hospital cites *Echols v Employment Security Comm,* 380 Mich 87; 155 NW2d 824 (1968), in support of its position that an employee who fails to maintain his statutorily required license has voluntarily left his employment. *Echols* involved a taxicab driver whose operator's license was suspended for 90 days because of an accumulation of traffic violations. As a valid license was a prerequisite for employment, claimant no longer reported for work, but instead filed an application for unemployment benefits. The Michigan Supreme Court upheld the decision of the board of review by ruling that claimant had voluntarily left his job and was therefore disqualified from receiving unemployment benefits. In so holding, the majority rejected Justice SOURIS' argument that such an interpretation would require the application of the doctrine of "constructive voluntary

---

[2] The results reached in both *Sullivan* and *Thomas, supra,* have been abrogated by legislative enactment. See *Alexander v Employment Security Comm,* 4 Mich App 378, 381; 144 NW2d 850 (1966), *lv den* 379 Mich 751 (1967).

leaving", a doctrine the use of which has been repeatedly rejected by the Michigan Supreme Court. See, *e.g., Copper Range Co v Unemployment Compensation Comm,* 320 Mich 460, 469; 31 NW2d 692 (1948); *Thomas, supra,* p 669, and *Jenkins v Employment Security Comm,* 364 Mich 379, 384; 110 NW2d 899 (1961).

Similarly, the Court in *Phillips v Employment Security Comm,* 373 Mich 210, 212; 128 NW2d 527 (1964), held that the claimant, a taxicab driver whose license was revoked due to his failure to pay traffic tickets, had by his own actions deliberately committed the acts that resulted in the loss of his license.

While the above cases and others interpreting § 29(a)(1) of the act are difficult to reconcile, both *Echols* and *Phillips, supra,* can be distinguished from those cases allowing benefits. First, in each case the claimant failed to maintain prerequisites for hire and continued employment; and, second, the employer in each case would have been in violation of state law had he allowed the claimant to continue working without a license.[3] Both of these conditions are met in the present case.

Although the referee and the board of review found that the claimant was not licensed at the time of her hire, and further that a license was not a condition of hire, we agree with the circuit court in holding that such findings are not supported by the record. MCL 333.17211; MSA 14.15(17211) provides that no one may engage in the practice of nursing in the State of Michigan unless licensed to do so. By definition this section applies to graduate nurses as well as practical and

---

[3] Although not mentioned by either the *Echols* or *Phillips* Courts, MCL 257.327; MSA 9.2027 provides that "[n]o person shall knowingly employ any chauffeur to operate a motor vehicle who is not licensed as provided in [the] chapter". An employer convicted of violating this section is guilty of a misdemeanor. MCL 257.901; MSA 9.2601.

registered nurses. See MCL 333.17201(1)(a); MSA 14.15(17201)(1)(a). It is undisputed that claimant met all the requirements for, and was granted, a temporary license in accordance with applicable state law. MCL 333.16181; MSA 14.15(16181) provides that such a license is valid for one year until the results of the next scheduled examination are available.

It is clear, then, that claimant's temporary license was a condition for hire. It is also clear that claimant could not continue in her status as a graduate nurse if her temporary license should expire, nor could she be continued in the hospital's employ as a registered nurse if she failed to pass the state licensing examination prior to the expiration of her temporary license. Had the hospital either hired or allowed claimant to continue on in her capacity as a graduate nurse without the benefit of a license, it would have been guilty of a misdemeanor. See MCL 333.21513; MSA 14.15(21513) and MCL 333.1299; MSA 14.15(1299).

In view of the above, we conclude that a claimant who fails to maintain prerequisites for hire and continued employment so that the employer is required by law to terminate the employment relationship has voluntarily left work without good cause attributable to the employer.

The legislative intent as found in the act's declaration of policy provides additional support for our holding. While claimant's failure to pass her licensing examination may or may not have been her own "fault", the means of obtaining a passing score were exclusively within her knowledge and control. Allowing benefits under these circumstances would not serve the express legislative policy of encouraging stable employment since the hospital merely complied with state law and did nothing to violate that principle. On the contrary,

employers would be discouraged from hiring appli-
cants who had not yet taken their licensing exami-
nations.

We affirm. No costs.

R. ROBINSON, J., concurred.

T. M. BURNS, P.J. *(dissenting).* I dissent because I
do not believe that the claimant voluntarily failed
the nursing board's examination. The law relevant
to this issue is quite clear—an employee who
leaves work voluntarily without good cause attrib-
utable to the employer is disqualified from receiv-
ing unemployment compensation benefits. MCL
421.29(1)(a); MSA 17.531(1)(a).

The claimant was terminated from her employ-
ment because she failed the nursing board's exami-
nation and, therefore, did not receive a license
which was necessary for her to continue in her
position at Children's Hospital. Since the claimant
was terminated because she failed the examina-
tion, the primary issue is whether she voluntarily
failed the examination. This Court in *Laya v Ce-
bar Construction Co,* 101 Mich App 26; 300 NW2d
439 (1980), defined "voluntary" as used in the
statute:

"We hold that the word 'voluntary' as used in section
29(1)(a)(1) must connote a decision based upon a choice
between alternatives which ordinary men would find
reasonable—not mere acquiescence to a result imposed
by physical and economic facts utterly beyond the
individual's control." 101 Mich App 32, quoting *Lyons v
Employment Security Comm,* 363 Mich 201, 216; 108
NW2d 849 (1961) (EDWARDS, J., dissenting).

Applying this test, I am unable to conclude that
the claimant was faced with a choice between
passing and failing the examination. Had she been

faced with that choice, I am sure that the claimant would have chosen to pass. While it is possible that someone may choose to fail the examination by not studying for it or by intentionally marking the wrong answers, such a situation is highly improbable, and there is no indication that the claimant took such steps in the instant case.

I do not agree with the majority's application of *Echols v Employment Security Comm,* 380 Mich 87; 155 NW2d 824 (1968), and *Phillips v Employment Security Comm,* 373 Mich 210; 128 NW2d 527 (1964). The majority correctly notes that in both those cases the claimants failed to maintain prerequisites for continued employment and that the employer would have been in violation of state law had the claimants continued to work. These general similarities, however, do not make *Echols* and *Phillips* applicable. Further analysis shows that the claimants in *Echols* and *Phillips* were fired for losing their driver's licenses due to violations of traffic ordinances. In *Echols,* the claimant lost his license because he received 12 points on his driving record for traffic violations. In *Phillips* the claimant failed to pay a traffic fine. In those cases, the claimants were faced with a choice between alternatives that ordinary persons would consider reasonable. They could have avoided their dilemma by complying with the law. Instead they chose to violate the law and suffered the consequences. In the instant case, the claimant could only choose to take the examination and put forth her best effort to pass it. The claimant, however, could not decide whether she passed the examination. This decision is solely within the discretion of the examination's administrators.

I recognize that the majority raises some compelling public policy questions. I feel however that

the public policy arguments should not be used to avoid the clear language of the statute as previously interpreted by this Court. I would find that claimant did not voluntarily leave her job and would reverse the circuit court.