WARREN v CARO COMMUNITY HOSPITAL

Docket Nos. 103953-103955. Argued January 7, 1998 (Calendar No. 8). Decided May 19, 1998.

Cindy Warren sought unemployment compensation after her employer, Caro Community Hospital, refused to allow her to return to work following the birth of her child. A hearing referee granted benefits, holding the claimant's leaving to be involuntary. The hospital appealed, and the Employment Security Commission affirmed. The hospital again appealed, and the referee again held that the claimant's leaving work was involuntary. The MESC Board of Review affirmed. The Tuscola Circuit Court, Patrick R. Joslyn, J., reversed, holding that the claimant was disqualified for voluntarily leaving work without good cause. The Court of Appeals, DOCTOROFF, C.J., and CAVANAGH and SMOLENSKI, JJ., affirmed in an unpublished opinion per curiam, holding that because the claimant's pregnancy was deemed not attributable to her employer, she did not have good cause for leaving work (Docket Nos. 166775, 167755, 168096). On rehearing, the Court, DOCTOROFF, P.J., and CAVANAGH, J. (SMOLENSKI, J., dissenting), affirmed in an unpublished order. Leave to appeal to the Supreme Court originally was denied. 452 Mich 852 (1996). On reconsideration, leave was granted. 456 Mich 853 (1997). The claimant appeals.

In an opinion by Justice CAVANAGH, joined by Chief Justice MALLETT, and Justices BRICKLEY, BOYLE, KELLY, and TAYLOR, the Supreme Court held:

When an employee is willing to continue working, but is advised by a doctor not to work because of a temporary or short-term, self-limited medical condition properly documented by the employee's treating physician, the employee has not voluntarily quit employment by following the doctor's advice. If an employer refuses to allow the employee to return to work as soon as medically possible, the employee is entitled to unemployment compensation under the act.

1. The Employment Security Act provides that a person who leaves work voluntarily without good cause attributable to the employer is disqualified from receiving unemployment compensation. Whether a person is entitled to unemployment compensation

involves a two-part inquiry. First, it must be determined if the employee left voluntarily. If it is found that the employee left involuntarily, the inquiry ends and unemployment compensation may be had. Whether an employee left voluntarily will depend on the particular facts and circumstances of the case. If it is found that the leaving was voluntary, it then must be determined whether it was without good cause attributable to the employer.

2. In this case, the claimant was advised by her doctor not to work beyond a certain date. This advice was entirely unchallenged. Furthermore, she did not seek unemployment benefits for the period that she was medically unable to work; rather, she sought benefits only for the period that the defendant refused to allow her to return to work following her pregnancy. Fault should not be ascribed to her simply because a medical condition rendered her temporarily unable to work. Because she had received medical advice not to work, she did not voluntarily leave, and, thus, is entitled to unemployment benefits for the period that she was medically able to work, but her employer refused to allow her to return after her pregnancy.

Justice WEAVER concurred only in the result.

Reversed and remanded.

*Richard W. McHugh,* and *Jordan Rossen,* General Counsel, and *Thomas C. Carey,* Associate General Counsel, for the plaintiff-appellant.

*Neil A. Mac Vicar* for the defendant-appellee.

Amicus Curiae:

*Sachs, Waldman, O'Hare, Helveston, Bogas & McIntosh, P.C.* (by *Mary Ellen Gurewitz* and *Nicholas J. Waddles*), for Michigan State AFL-CIO.

CAVANAGH, J. In this case we are asked to determine whether a pregnant woman who left her employment on the advice of her doctor and who was willing to return to work after giving birth to her child, but was refused permission to return by her employer, is entitled to unemployment compensation. We hold that plaintiff did not "voluntarily" leave work when she

followed her doctor's unchallenged advice before giving birth to her child.

I

Cindy Warren commenced her employment with Caro Community Hospital on July 15, 1988. While initially being hired as an "on-call" nurse's aide, beginning on February 1, 1990, she was treated as a full-time employee and was regularly scheduled to work at least thirty-two hours a week. After she gained full-time status, she was scheduled to work forty hours a week. Six weeks later, Ms. Warren asked the hospital to schedule her no more than thirty-two hours a week because of her pregnancy. The employer granted her request.

On August 3, 1990, Warren submitted a request for leave of absence during the final weeks of her pregnancy. She provided her employer with a physician's statement supporting her request. The hospital denied the request pursuant to its policy, contained in a collective bargaining agreement, that refused leaves of absence for employees who had not been scheduled to work full-time for one consecutive year before the request.

Pursuant to her doctor's recommendation, plaintiff called the hospital and indicated that she was no longer available to work because of her pregnancy. On August 13, 1990, plaintiff failed to report for work. Following the birth of her child, Warren was released by her doctor to return to work on October 1, 1990. She sought to return to work at the hospital in late September 1990. The hospital did not respond to Warren's request to return to work, and she was not offered further work by the hospital.

On October 3, 1990, plaintiff filed a claim for unemployment benefits. The Michigan Employment Security Commission held that the claimant was "forced to quit her job because she didn't qualify for a maternity leave of absence due to her length of employment. The claimant's leaving is deemed involuntary." The employer appealed, and in its determination dated December 20, 1990, the agency affirmed its earlier ruling. The employer again appealed, and the MESC referee held that claimant's leaving work was "involuntary." Similarly, a majority of the board of review held that claimant's separation was involuntary.

The employer then appealed to the circuit court, which reversed the board of review and held that the claimant was disqualified for voluntarily leaving work without good cause pursuant to the Employment Security Act, MCL 421.29(1)(a); MSA 17.531(1)(a).

Both claimant and the MESC filed appeals with the Court of Appeals, which were consolidated. The Court of Appeals affirmed the circuit court in an unpublished per curiam opinion. The Court held that because the claimant's pregnancy was deemed not attributable to her employer, claimant did not have good cause for leaving her work. In an order granting rehearing, the Court affirmed its previous decision.

Claimant filed an application for leave to appeal to this Court, which was denied. Justice LEVIN, joined by Justice CAVANAGH, dissented. 452 Mich 852 (1996). Claimant moved for reconsideration, and leave to appeal was granted. 456 Mich 853 (1997).

II

The Employment Security Act provides:

An individual is disqualified from receiving benefits if he or she:

(a) Left work voluntarily without good cause attributable to the employer or employing unit. [MCL 421.29(1); MSA 17.531(1).]

As we recently stated in *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 417; 565 NW2d 844 (1997), citing *Dudewicz v Norris Schmid, Inc*, 443 Mich 68, 77; 503 NW2d 645 (1993), because "the MESA is a remedial statute, it should be liberally construed to achieve its intended goal." Indeed, the act states:

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his family, to the detriment of the welfare of the people of this state. Social security requires protection against this hazard of our economic life. Employers should be encouraged to provide stable employment. [MCL 421.2; MSA 17.502.]

It is under this backdrop that we had occasion to decide a similar case, *Clarke v North Detroit General Hosp*, 437 Mich 280; 470 NW2d 393 (1991). In *Clarke*, two nurses who were employed by defendant hospitals were discharged after they failed nursing board licensing examinations. The Court held that plaintiffs did not leave work voluntarily when they were discharged after they failed their examinations; therefore, they were entitled to unemployment benefits. We noted that the plaintiffs did not "deliberately or negligently fail" their examination, nor would we "ascribe fault to [plaintiffs] simply because they failed

the examination." *Id.* at 283, 289. We specifically noted that in reaching the conclusion that the employees had not voluntarily quit, no issue was presented whether they left work "without good cause attributable to the employer." *Id.* at 282.

In her opinion in *Clarke*, Justice RILEY (concurring) agreed with the majority that there were no allegations of misconduct, negligence, or illegal acts, nor was there evidence that plaintiffs were negligent in preparing for or taking the examination. She stated:

> I agree with these statements and would suggest that they are based more on a rule which focuses on "issues of volition" and on whether the employees "left work voluntarily" than on simply whether the employer discharged the employees. . . . [Plaintiffs] did not "leave work voluntarily" regardless of whether they were discharged or had to resign. [*Id.* at 291-292.]

We agree with this statement, and find that Justice RILEY's opinion is really a reiteration of the majority opinion. This is so because the majority does not solely rely on the fact that plaintiffs were "discharged" to reach its conclusion. Rather, the opinion, as noted by Justice RILEY, focuses on the fact that plaintiffs did not negligently fail the examination or "quit or willingly resign[]." *Id.* at 283. Under either the majority's reasoning or that of Justice RILEY, the facts must first show that plaintiff "voluntarily" quit her job before the disqualification from compensation applies.

Therefore, like *Clarke*, we continue to hold that whether a person is entitled to unemployment benefits is a two-part inquiry. Under the first prong, we must determine whether plaintiff voluntarily left her position. If we find that she left her position involun-

tarily, the inquiry ends and she is entitled to unemployment compensation. Whether a person left voluntarily will depend on the particular facts and circumstances of the case. However, if the court finds that plaintiff left her position voluntarily, we must advance to prong two to determine whether her leaving was "without good cause attributable to the employer."

### III

In this case, Warren had a note from her doctor stating that she was advised not to work beyond a certain date. Defendant offered no evidence that the doctor's note was a fraud or that the medical recommendation was wholly without merit. Indeed, the advice of the doctor was entirely unchallenged. Furthermore, plaintiff did not seek unemployment benefits for the period when she was medically unable to work. Rather, she sought unemployment benefits only for the period when defendant refused to allow her to return to work following her pregnancy. We limit the application of this case to similar factual situations and hold that when an employee is willing to continue working, but is advised by a doctor not to work because of a temporary or short-term, self-limited medical condition properly documented by the employee's treating physician, the employee has not "voluntarily" quit employment by following the doctor's advice. If the employer refuses to allow the employee to return to work as soon as medically possible, the employee is entitled to unemployment compensation under the act.

In the instant case, like *Clarke*, we will "not ascribe fault to" plaintiff simply because her medical condi-

tion rendered her temporarily unable to work. We agree with the board of review that

> [c]learly in the case before us claimant did not have a choice between reasonable alternatives. Claimant's separation from employment was imposed upon her by factors beyond her control.
>
> We therefore find that claimant did not voluntarily leave her employment. Claimant's leaving was involuntary as she had no choice given the employer's refusal to grant her request for a necessary leave of absence and the employer's refusal to reemploy her once she was physically able to return to work.

Defendant's focus on *Watson v Murdock's Food*, 148 Mich App 802; 385 NW2d 693 (1986), is misguided. In *Watson*, the claimant left her waitress job after her physician placed her on lifting and bending restrictions because of her pregnancy. The Court of Appeals held that the plaintiff was not allowed unemployment compensation because the Employment Security Act "was not intended to provide a form of mandatory health or disability insurance at the expense of the employers who fund the system." *Id.* at 805.

To begin, *Watson* is not controlling on this Court. Furthermore, the facts in *Watson* are distinguishable from this case. In *Watson*, the plaintiff left her employment with a doctor's note, like plaintiff in this case. However, the plaintiff in *Watson* had no intention of returning to work and sought unemployment compensation for the time when she was medically *unable* to work. *Id.* at 804. In the instant case, plaintiff did not apply for unemployment compensation until she was medically able to work, but was refused return by her employer. The difference is obvious. In the former instance, the employer would be required

to pay unemployment benefits to a person who had no intention of returning to work and who sought benefits for the time when she was medically unable to work. This would be akin to mandatory health care. In the latter instance, the employer would be required to pay unemployment benefits for refusing to allow a person to work who is deemed medically able and wants to return. We do not indorse or ratify *Watson*, but simply note that it is not controlling on the issue presented, nor is it factually similar to the case at hand.

Finally, defendant's focus on the voluntariness of plaintiff's *pregnancy* is misguided. The focus should not be on plaintiff's pregnancy, but rather on the conditions that rendered her unable to work. In this case, no fault can be placed on plaintiff for the fact that medically, many pregnant women may be required to temporarily stop working as the time for delivery draws near. This is a medical condition, the ignoring of which could cause serious health consequences to both the mother and the baby. To say that the mother "voluntarily" left because she chose to get pregnant ignores the real issue that medically she was ill-advised to work. It does not matter whether, as defendant asserts, "the Hospital had no responsibility for the claimant's medical condition." Plaintiff followed her doctor's orders for her own safety and for the safety of her baby. Plaintiff did not voluntarily leave.

Because we find that plaintiff did not voluntarily leave work, we need not address the second prong of the test: whether her voluntarily leaving work was for good cause attributable to the employer.

For this reason, we reverse the decision of the Court of Appeals and find that plaintiff is entitled to unemployment benefits for the period when she was medically able to work, but her employer refused to allow her to return after her pregnancy. We remand to the MESC for calculation of compensation owed to plaintiff consistent with this opinion.

MALLETT, C.J., and BRICKLEY, BOYLE, KELLY, and TAYLOR JJ., concurred with CAVANAGH, J.

WEAVER, J., concurred only in the result.