*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEONARD WILSON,

        Claimant-Appellant,

v

MEIJER GREAT LAKES LIMITED
PARTNERSHIP and UNEMPLOYMENT
INSURANCE AGENCY,

        Respondents-Appellees.

UNPUBLISHED
July 1, 2021

No. 349078
Ingham Circuit Court
LC No. 18-000711-AE

Before: JANSEN, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. *(dissenting)*

I respectfully dissent. I believe that when MCL 421.29(1)(a) is read in context, it reflects a Legislative intent to base disqualification for unemployment benefits on acts or omissions that were actually within the claimant's control. I therefore conclude that the MCAC erred in disqualifying claimant for benefits on the basis of MCL 421.29(1)(a)'s "no show, no call" provision.

I need not repeat the facts, most of which are thoroughly set forth by the majority. I add only that the ALJ discussed whether claimant could have made better efforts to acquire the funds necessary to call Meijer and comply with Meijer's leave policy. The ALJ opined that it was "possible," albeit "very difficult," that claimant could have acquired the funds, but never indicated that success was likely. Rather, the ALJ and the MCAC relied on treating MCL 421.29(1)(a) as setting forth an essentially "strict liability" test. I conclude that such a test contravenes the Legislature's intent.

The goal of statutory interpretation is to discern and give effect to the Legislature's intent, which begins by examining the language of the statute and applying plain and unambiguous language as written. *In re Reliability Plans of Electric Utilities for 2017-2021*, 505 Mich 97, 119; 949 NW2d 73 (2020). However, in examining and considering the language of the statute, the statute must be read as a whole, and the language must be considered in the context of the entire statutory scheme. *Madugula v Taub*, 496 Mich 685, 81; 853 NW2d 75 (2014); *Honigman Miller*

*Schwartz and Cohn LLP v City of Detroit*, 505 Mich 284, 305-307; 952 NW2d 358 (2020). The courts may not simply cite "context" without further explication as an excuse to depart from the plain language of a statute, unless the language of the statute reflects some internal inconsistency. See *People v McIntire*, 461 Mich 147, 156 n 9; 599 NW2d 102 (1999). Nevertheless, to the extent any judicial construction of a statute is warranted, the courts should, to the extent possible, strive to avoid results that are absurd, unjust, or prejudicial to the public interest. See *Rafferty v Markovitz*, 461 Mich 265, 270; 602 NW2d 367 (1999). Even unambiguous language may be properly understood only by considering its context. *Tyler v Livonia Pub Schs*, 459 Mich 382, 390-392; 590 NW2d 560 (1999).

As the majority explains, at all times relevant to this appeal, MCL 421.29(1)(a) provided:

(1) Except as provided in subsection (5), an individual is disqualified from receiving benefits if he or she:

(a) Left work voluntarily without good cause attributable to the employer or employing unit. An individual who left work is presumed to have left work voluntarily without good cause attributable to the employer or employing unit. An individual who is absent from work for a period of 3 consecutive work days or more without contacting the employer in a manner acceptable to the employer and of which the individual was informed at the time of hire shall be considered to have voluntarily left work without good cause attributable to the employer. An individual who becomes unemployed as a result of negligently losing a requirement for the job of which he or she was informed at the time of hire shall be considered to have voluntarily left work without good cause attributable to the employer. An individual claiming benefits under this act has the burden of proof to establish that he or she left work involuntarily or for good cause that was attributable to the employer or employing unit. An individual claiming to have left work involuntarily for medical reasons must have done all of the following before the leaving: secured a statement from a medical professional that continuing in the individual's current job would be harmful to the individual's physical or mental health; unsuccessfully attempted to secure alternative work with the employer; and unsuccessfully attempted to be placed on a leave of absence with the employer to last until the individual's mental or physical health would no longer be harmed by the current job. . . .

The majority analyzes the meaning of the phrase "shall be considered" in the third sentence of MCL 421.29(1)(a). In complete isolation, the majority's construction of that phrase is reasonable. However, although the majority recognizes that the clause must be considered in its wider statutory context, I respectfully disagree with the majority's attempts to do so.

MCL 421.2(1) states that the public policy of the state is to provide assistance to people who are involuntarily unemployed. MCL 421.8 states, in its first sentence, "A basic purpose of this act is to lighten the burden of involuntary unemployment on the unemployed worker and his family." Despite the clear importance of unemployment being involuntary, nowhere in the Employment Security Act, MCL 421.1 *et seq*, is the word "voluntary" or "involuntary" defined. According to *Merriam-Webster's Collegiate Dictionary* (11th ed), "involuntary" means "done

contrary to or without choice" or "not subject to control of the will." Consistent with this definition, our Supreme Court has held "involuntariness" within the meaning of the Employment Security Act to indicate the absence of realistically available reasonable alternatives, or the external imposition of constraints, irrespective of whether those constraints are a consequence of a voluntary act. *Lyons v Appeal Bd of Mich Employment Security Comm*, 363 Mich 201, 216; 108 NW2d 849 (1961); *Warren v Caro Comm Hosp*, 457 Mich 361, 365-369; 579 NW2d 343 (1998). This is further consistent with the fact that even true strict-liability crimes generally require the defendant to have an actual ability to act or to refrain from acting. *People v Likine*, 492 Mich 367, 392-398; 823 NW2d 50 (2012).

It would violate the explicitly stated Legislative intent and public policy underlying the act to construe "consider," for purposes of MCL 421.29(1)(a), as creating a disqualification based solely on whether an event occurred without taking into account whether the claimant is at fault. Such a construction is also inconsistent with the remainder of the statute, even in isolation. The fifth sentence states that the claimant "has the burden of proof to establish that he or she left work involuntarily or for good cause that was attributable to the employer or employing unit." Consistent with the understanding of what it means to be "involuntary" everywhere else in the Act, this sentence indicates that claimants are entitled to show that their departure from work was not under their actual control. The majority cites the fourth sentence, which refers to "negligently losing a requirement for the job." However, the concept of negligence is based upon a person acting (or failing to act) with some degree of volition and control. See *Soule v Grimshaw*, 266 Mich 117, 119-120; 253 NW 237 (1934); see also *Zeni v Anderson*, 397 Mich 117, 136; 243 NW2d 270 (1976) ("[l]iability without fault is not truly negligence").

As the majority observes, it is not the role of the courts to craft public policies and interfere with the Legislature's decisions. *Lash v City of Traverse City*, 479 Mich 180, 197; 735 NW2d 628 (2007). However, the Legislature has explicitly set forth an applicable public policy here. I would conclude that if the Legislature truly intended to create a strict liability bar to a claimant being permitted to verify that an absence from work was *actually* involuntary, contrary to its expressly stated intent underlying the Employment Security Act, it would need to do so unambiguously, and the third sentence of MCL 421.29(1)(a) is not so unambiguous. When read in context, I would conclude that it establishes a presumption, but not an insurmountable presumption. The fact that claimant used his one available courtesy call to contact Meijer, even if he failed to reach the correct person, is powerful evidence that claimant's absence from his work was not actually voluntary. I would hold that the MCAC and the trial court erred in treating as irrelevant whether claimant could have contacted Meijer pursuant to Meijer's policies.

/s/ Amy Ronayne Krause